UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| SANTA LA HILL, INC., ) | |
|       Plaintiff, ) | |
| ) | |
|   vs. ) | 3:07-cv-00100-RLY-WGH |
| ) | |
| KOCH DEVELOPMENT CORPORATION ) | |
| d/b/a HOLIDAY WORLD AND ) | |
| SPLASHIN' SAFARI and THE TOWN OF ) | |
| SANTA CLAUS, INDIANA, ) | |
|       Defendants. ) | |

**ENTRY ON KOCH DEVELOPMENT CORPORATION'S MOTION FOR SUMMARY JUDGMENT, THE TOWN OF SANTA CLAUS' MOTION FOR SUMMARY JUDGMENT, and SANTA LA HILL'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The plaintiff, Santa La Hill, Inc. ("SLH"), is a rural water utility which, for more than forty years, provided water to Koch Development Corporation d/b/a Holiday World and Splashin' Safari ("KDC"). On June 20, 2007, KDC notified SLH that it no longer required its services and immediately began purchasing its water directly from the Town of Santa Claus (the "Town"). Shortly thereafter, SLH filed this lawsuit. In Count I of the Amended Complaint, SLH seeks a declaratory judgment that the Town is violating its rights as a rural water utility under 7 U.S.C. § 1926(b) ("Section 1926(b)"). In Count II, SLH moves to enjoin the Town from supplying water to KDC directly, or billing KDC directly for water supplied to KDC, and moves to enjoin KDC from purchasing water directly from the Town and from paying the Town, rather than SLH, for water service

1

provided to KDC. And in Count III of the Amended Complaint, SLH alleges that the "conduct of the Defendants, jointly and severally, constitutes a violation of SLH's rights not to be deprived of its rights and privileges under the Constitution and the laws of the United States pursuant to 42 U.S.C. § 1983." SLH also moves for attorney fees under 42 U.S.C. § 1988. The parties now move for summary judgment. For the reasons explained below, the court **GRANTS** KDC's motion for summary judgment, **GRANTS** the Town's motion for summary judgment, and **DENIES** SLH's motion for partial summary judgment.

I.   Factual Background

   A.   General Background

1.  SLH is a non-profit rural water utility association organized in June of 1964 to provide water and fire protection for the areas of Spencer County known as Santa Claus, Lamar, and Mariah Hill. (Affidavit of Terry Tischendorf ("Tischendorf Aff.") ¶ 2).

2.  On December 21, 1979, SLH entered into a loan agreement with the USDA in the amount of $98,000 to finance an extension to SLH's existing water facilities and to discharge some of its outstanding financial obligations. (Tischendorf Aff. ¶ 6). Under the terms of the loan agreement, SLH agreed to repay the loan over a period of 40 years and signed a promissory note to that effect. (SLH Exs. 3, 4). As such, SLH is a rural water utility entitled to the protections of 7 U.S.C. § 1926.

3.  The Town was incorporated in 1967, and, two years later, petitioned the Public

       Service Commission ("PSC") for a water utility to serve the needs of its industrial and commercial users. (Affidavit of Kim Christensen ("Christensen Aff. ") ¶ 9, Ex. A; Tischendorf Aff. ¶ 3). That request was granted. (*Id.*, Ex. A).

4. After the Town developed its own water utility, SLH continued to provide water to certain portions of the Town, including KDC. (Tischendorf Aff. ¶ 3; Hearing on Motion for Preliminary Injunction, Tischendorf Testimony ("Tischendorf Tr.") at 51).

5. KDC first became a customer of SLH in 1966, and quickly became its largest customer in terms of revenue and volume purchased. (Tischendorf Aff. ¶ 4).

6. Today, SLH has approximately 410 customers. (*Id.* ¶ 5).

7. The Town is a current customer of the Patoka Lake Regional Water and Sewer District ("Patoka Lake"). Patoka Lake sells potable water to the Town pursuant to contract, the terms of which provide that the Town must purchase a minimum of 400,000 gallons per day ("gpd"), not to exceed 600,000 gpd. (Affidavit of Bruce A. Heeke ("Heeke Aff.") ¶ 3; Deposition of Russ Luthy ("Luthy Dep.") at 63).

8. Patoka Lake provides the water to the Town via a twelve inch (12") line from Patoka Lake to the Town. (Heeke Aff. ¶ 4; Luthy Dep. at 64).

9. SLH purchases its water from the Town pursuant to a Water Purchase Agreement which requires SLH to purchase 70,000 gpd, and permits SLH to purchase up to 105,000 gpd. (Affidavit of Russ Luthy ("Luthy Aff." ¶ 6; SLH Ex. 7).

10. Water reaches KDC through water lines owned by the Town, through a meter

      (M1) owned by KDC, through a water tower owned by KDC, through lines owned by the Town, through a meter (M2) purchased by SLH, and finally, to KDC's water lines which lead to KDC. All water lines and meters are maintained by the Town. (Luthy Dep. at 10-16; 56-59; SLH Ex. 21).

11. KDC requires anywhere between 250,000 and 450,000 gallons of water on an average summer day. (Affidavit of William Koch ("Koch Aff.") ¶ 11).

12. With the planned expansion of KDC, KDC's water needs and usage will continue to increase. (Tischendorf Tr. at 57-58).

13. SLH currently does not have the infrastructure to serve KDC on its own, and, "without further research," could not answer when it would "be able to have the necessary pipes in the ground to supply [KDC] with water." (*Id.* at 50, 55-56, 59).

14. For the past 14 years, SLH has utilized the same infrastructure to supply water to KDC. (*Id.* at 60) (Q: How was Santa La Hill providing water to KDC for the past 14 years prior to June 14, 2007? A: Through the present infrastructure.").

    **B.   The Parties' Relationship Breaks Down**

15. At all relevant times, SLH has been billed by the Town for potable water supplied to KDC, and in turn SLH has re-billed KDC for the water supplied at SLH's retail rates. (Christensen Aff. ¶ 3; Koch Aff. ¶ 4).

16. The price differential for KDC is substantial. In 2006 alone, KDC paid SLH $222,459.17 for water billed by SLH. (Koch Aff. ¶ 5). Had KDC been billed directly by the Town, KDC would have paid the Town $172,273.20 for the same

water.  (Christensen Aff. ¶ 5).

17. In 2005, SLH learned that the Town intended to begin selling water directly to KDC, thus making KDC a customer of the Town rather than SLH.  (Tischendorf Aff. ¶ 10).

18. Following a series of letters between the parties regarding this issue, on June 7, 2005, the Town agreed to meet with SLH and discuss the issues facing the parties. (SLH Exs. 8-11).

19. On May 16, 2006, the parties entered into a Memorandum of Understanding and Joint Cooperation Agreement ("Joint Cooperation Agreement"), whereby the parties agreed that a Regional Water District should be formed to meet the increased water demands in Spencer County.  In the Joint Cooperation Agreement, the parties acknowledged that SLH purchased water from the Town on a wholesale basis, and the Town purchased water on a wholesale basis from the Patoka Lake Regional Water and Sewer District.  (SLH Ex. 12).

20. Pursuant to the Joint Cooperation Agreement, the Town agreed to petition IDEM to establish the Regional District.  (*Id*.).

21. For unknown reasons, the Town did not follow through with this promise.

   **C.   KDC Ends Its Relationship With SLH**

22. On June 20, 2007, William Koch, Jr. ("Koch") of KDC sent a letter to SLH announcing KDC's intent to purchase water directly from the Town.  (SLH Ex. 14).

23. On that same day, Koch presented Fifth Third Bank Cashier's Check Number 11642437 payable to Rural Development and designated for the payment of SLH's outstanding debt. (Koch Aff. ¶ 7).

24. Approximately an hour or so later, Russ Luthy, the Town's Utilities Superintendent, took a reading off M2 for the purpose of establishing a new account for KDC based on that reading, and for a final bill to SLH. (Luthy Aff. ¶ 5).

25. On June 21, 2007, SLH's counsel received a telephone call from the USDA (Rural Development) inquiring as to whether SLH consented to KDC's pre-payment of their USDA loan. SLH responded in the negative. (SLH Ex. 15).

26. On June 25, 2007, Koch learned that his money had been refunded by the USDA to Fifth Third Bank and placed back into his account at that institution. (*Id.* ¶ 9).

## II.     Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. *See Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir. 1992). The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

In deciding whether a genuine issue of material fact exists, the court views the evidence and draws all inferences in favor of the nonmoving party. *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996). However, when a summary judgment motion is made and supported by evidence as provided in Rule 56(c), the nonmoving party may not rest on mere allegations or denials in its pleadings but "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

Where, as here, cross-motions for summary judgment are pending, the court evaluates each movant's motion under the Rule 56 standards cited above, "constru[ing] all inferences in favor of the party against whom [each] motion under consideration is made." *Metro. Life Ins. Co. v Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## III.  Discussion

### A.  Count I

In Count I, SLH seeks a declaratory judgment that the Town and KDC[1] are violating its rights under Section 306(b) of the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1926(b), which provides:

---

[1] In paragraph 16 of the Amended Complaint, SLH alleges, "If permitted to proceed with these plans (i.e., the Town providing water to KDC), KDC would be participating in the direct violation of Section 1926(b) by the Town." (Amended Complaint ¶ 16). KDC argues at the end of its Reply that Section 1926(b) does not apply to KDC as it is not a "competing utility." However, none of the parties address whether KDC may be liable as a participant in the Town's alleged violation. The court need not reach that issue, since it finds that SLH did not establish a violation of Section 1926(b).

7

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b). "Section 1926(b) was enacted as part of a federal statutory scheme to extend loans to certain associations providing water service or management, soil conservation practices, or other essential community services to rural residents." *Jennings Water v. City of North Vernon, Ind.*, 895 F.2d 311, 314-315 (7th Cir. 1989). The purpose behind this legislation is threefold: "(1) to reduce peruser cost resulting from the larger base of users, (2) to provide greater security for the federal loans made under the program, and (3) to provide a safe and adequate supply of water." *Bell Arthur Water Corp. v. Greenville Util. Comm'n*, 173 F.3d 517, 520 (4th Cir. 1999); *see also CSL Util., Inc. v. Jennings Water, Inc.*, 16 F.3d 130, 134 (7th Cir. 1993).

To establish a violation of Section 1926(b), a plaintiff must show that at the time of the curtailment of its service: (1) the plaintiff was indebted to the USDA; (2) the plaintiff provided or made service available to the customer in dispute; and (3) a competing entity curtailed or limited service in the area to which the plaintiff was making service available to that customer. *Jennings Water*, 895 F.2d at 1314-15; *Bell Arthur*, 173 F.3d at 520. This case turns upon the second of these factors – i.e., whether SLH provided or made service available to KDC. The terms "provided" or "made available"

are not defined by statute or regulation. Thus, the court must turn to case law to interpret the meanings of these terms.

In *North Shelby Water Co. v. Shelbyville Mun. Water and Sewer Comm'n*, 803 F.Supp. 15 (E.D. Ky. 1992), the district court held that a rural water utility (North Shelby) made service available within the meaning of Section 1926(b) by virtue of the physical location of its water distribution lines (i.e., it had "pipes in the ground"). Although the rural water utility had not "provided" service, and did not have distribution lines within the disputed area, the court found that the rural water utility had nevertheless made service available by virtue of the fact that it had distribution lines adjacent to the property, and thus had the capability of providing service within a reasonable time after an application for service. *Id.* at 22*. See also Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 237 (6th Cir. 1996) ("[W]hether an association has made service available is determined based on the existence of facilities on, or in the proximity of, the location to be served."); *Glenpool Util. Serv. Auth. v. Creek County Rural Water Dist. No. 2*, 861 F.2d 1211, 1214 (10th Cir. 1988) ("[The rural water utility] came within the purview of section 1926(b) . . . [by] having 'made [service] available' to the area, by virtue of its line adjacent to the property and its responsibilities to applicants within its territory.").

By contrast, in *Bell Arthur*, the Court held that a rural water utility had not made service available to an upscale development known as Ironwood even though it had a six-inch distribution line which ran through the development area. The evidence before the

9

court reflected that Ironwood required a 14-inch pipe, and that the rural water utility had not put forth the effort, nor obtained the financing, to construct the type of infrastructure required to supply Ironwood's water needs within a reasonable time. In so finding, the Court explained:

> Inherent in the concept of providing service or making service available is the *capability* of providing service or, at a minimum, of providing service within a reasonable time. Having a six-inch pipeline in the ground when a 14-inch line is necessary provides no support to a claim that a water association has adequate facility to provide such service. We conclude that in order to enjoy the protection of § 1926(b) for an area, an association must demonstrate as a threshold matter that it has adequate facilities within or adjacent to the area to provide service to the area within a reasonable time after a request for service is made.

173 F.3d at 526 (emphasis in original).

The case law teaches that whether a rural water utility has made service available is dependent upon two factors: (1) whether the rural water utility has "pipes in the ground[2]"– even if those pipes are merely adjacent to the disputed property at issue – and, if so, (2) whether the rural water utility has the capacity to service that area within a reasonable time. In the present case, it is undisputed that SLH does not have "pipes in the ground" to service KDC, nor the capability or the capacity to meet KDC's present water

---

[2] SLH argues that "there simply is no requirement that a utility own any, much less all, of the infrastructure carrying the water at issue in order to qualify for the protections of Section 1926(b)." (Plaintiff's Response at 20). In support of this argument, SLH points to the fact that there is no provision of Section 1926(b) which requires the same. Based upon the court's review of the relevant case law interpreting Section 1926(b), however, it appears implicit in the concept of "providing" or "making service available" that the rural water utility own its distribution lines. "Providing" or "making service available" certainly requires more than purchasing water on contract and re-billing it at a higher rate to KDC.

needs.  Moreover, SLH does not have a plan in place to meet the growing needs of KDC, even though it is fully aware that KDC is a growing theme park and that its water usage will continue to increase in the future. Thus, the evidence before the court shows that SLH cannot make service available to KDC within a reasonable time.

SLH argues that it has constructed and maintained general infrastructure with which it supplies its other customers, and that it has some limited infrastructure which is used to supply KDC at other locations, including one 3" meter, one 3/4 inch meter, and one 5/8 inch meter.  (Affidavit of Elisa Peters ¶¶ 4-7).  The infrastructure identified by SLH is not relevant to the issues before the court, as it remains undisputed that KDC requires a 12-inch line to service its needs.  As noted above, SLH does not have a 12-inch line available to service KDC, nor does it have the current capacity and capability to acquire and construct one within a reasonable time.

Even if SLH had the infrastructure in place, SLH does not have access to an adequate water supply to fulfill KDC's water needs, further showing that SLH is not capable of providing or making service available to KDC within the meaning of Section 1926(b).  Pursuant to the Water Purchase Agreement between SLH and the Town, SLH is obligated to purchase 70,000 gpd, with a limit of 105,000 gpd.  Although the Town may supply more than 105,000 gpd, it is under no obligation to do so.  SLH's Chairman, Terry Tischendorf ("Mr. Tischendorf"), readily admits that 105,000 gpd does not meet KDC's unique water requirements.  (Tischendorf Tr. at 56-57).

The court further finds that this case favors the Defendants on policy grounds.

One of the purposes behind the Consolidated Farm and Rural Development Act is to reduce the peruser cost of water resulting from a larger base of users. SLH's Mr. Tischendorf testified that losing KDC as a customer will have a detrimental impact on SLH, and that its rates will have to be increased by 47%. (Supplemental Affidavit of Terry Tischendorf, SLH Ex. 26 ¶ 3). The consultant's opinion (name and credentials unknown) that Mr. Tischendorf relies upon for this proposition is not a part of the record; thus, Mr. Tischendorf's testimony is mere hearsay. In addition, the Water Purchase Agreement expressly states the water rate charged by the Town. (SLH Ex. 7 at 5-6). There is no evidence before the court showing that this rate has or will change in the future due to KDC's decision to bypass SLH and purchase water directly from the Town. (Deposition of Ron Smith at 30-31). Moreover, SLH has no plans to improve rural water development in Spencer County which would include, for example, expanding the number of its users, thus reducing the per-user cost.

A second purpose of the Consolidated Farm and Rural Development Act is to foster the means by which rural water utilities are able to pay off their USDA loans. It is undisputed that KDC attempted to pay off SLH's outstanding loan to the USDA, but that SLH interposed an objection to the same. SLH's refusal to allow KDC to extinguish its debt is further undercuts its Section 1926(b) claim.

### B.     Counts II and III

In Count II, SLH seeks a permanent injunction against the Town and KDC, and in Count III, SLH asserts a civil rights violation under Section 1983. With respect to its

12

request for a permanent injunction, SLH must show "success, as opposed to a likelihood of success, on the merits." *Collins v. Hamilton*, 349 F.3d 371, 374 (7th Cir. 2003). As SLH has failed to allege a Section 1926(b) violation, it is unable to show success on the merits of its claim. Count II of SLH's Amended Complaint therefore fails as a matter of law.

With respect to its Section 1983 claim, SLH must show that it was deprived of a right secured by the Constitution or federal law by one acting under color of state law. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). The court presumes, as KDC does, that SLH's claim is predicated on its Section 1926(b) claim, as there is no other constitutional or statutory right alleged in SLH's Amended Complaint. As just noted, SLH's Section 1926(b) claim fails as a matter of law. Thus, SLH's Section 1983 claim based on that statutory violation must fail as a matter of law.

## IV. Conclusion

The court finds that SLH is not entitled to the protections of 7 U.S.C. § 1926(b) because it is unable to show that it can provide or make service available to KDC within a reasonable time. Accordingly, the court **GRANTS** Koch Development Corporation's Motion for Summary Judgment (Docket # 52), **GRANTS** the Town of Santa Claus'

Motion for Summary Judgment (Docket # 48), and **DENIES** Santa La Hill's Motion for Partial Summary Judgment (Docket # 72).

**SO ORDERED** this  11th  day of January 2008.

                                              RICHARD L. YOUNG, JUDGE
                                              United States District Court
                                              Southern District of Indiana

Electronic Copies to:

Phillip J. Fowler
BINGHAM MCHALE LLP
pfowler@binghammchale.com

David T. McGimpsey
BINGHAM MCHALE, LLP
dmcgimpsey@binghammchale.com

Kevin R. Patmore
patmorelaw@psci.net

Robert W. Rock
BOWERS HARRISON LLP
rwr@bowersharrison.com

Paul J. Wallace
BOWERS HARRISON, LLP
pjw@bowersharrison.com